## Vender v. Luppold

C.P. of Berks County, no. 86-1448-00.

*Susan E.B. Frankowski,* for plaintiff.
*John A. Boccabella,* for defendant.

GRIM, *J.,* March 26, 1996—Defendant's exceptions to the domestic relations hearing officer's recommendation are before the court. The pertinent procedural and factual histories are as follows.

Plaintiff, Sheralyn S. Vender, and defendant, Chris A. Luppold were formerly married. They are the parents of two children: Jessica, born November 23, 1977, and Eric, born October 16, 1982. The parties share joint legal custody of the children. After the divorce plaintiff moved to Maryland with the children. Effective September 30, 1986, an order was entered by agreement whereby defendant paid support of $150 per week for the two children and one-half of uncovered health care expenses. Plaintiff filed a petition for modification on February 23, 1993, seeking an increase in the order and that provisions be made for payment of orthodontic care for Eric and psychological counseling for Jessica.

Defendant objects to the payment of Jessica's counseling for several reasons. Plaintiff did not discuss with him the issue of the daughter's need for counseling or the selection of a counselor prior to the commencement of the counseling in January 1993. In May 1993,

defendant discovered that an allegation of abuse perpetrated by him on Jessica was made. Defendant sought an evaluation and/or counseling for Jessica at Johns Hopkins University. Plaintiff refused to take Jessica there for an evaluation since she does not perceive the university as neutral because it believes in false memory syndrome.

Plaintiff owned a video store in Reading, Pennsylvania, and worked as a legal secretary and in a bank. She takes shorthand and types. At the time of the original hearing plaintiff was a media assistant for the Cecil County Board of Education. This job was for nine months per year and 30 hours per week. She worked an additional 11 to 14 hours per week as a sales clerk. The hearing officer found that plaintiff's net weekly income was $137. Her husband earns approximately $57,000 per year.

Defendant is an accountant and earns $717 per week net. In addition to the child support defendant pays $178 per month to a college fund for the children.

Based on this information the hearing officer recommended that the order be increased to $171 per week for the two children and that defendant pay 75 percent of unreimbursed medical expenses, including the cost of Jessica's counseling sessions. Defendant filed exceptions to this recommendation. Defendant argued that plaintiff's earning capacity is greater than her actual earnings and that the amount of the order is outside the guidelines when the college contribution is added. He also objected to paying the costs of Jessica's counseling, because he disapproves of the counselor, and 75 percent of the uncovered health care expenses.

Following argument this court remanded the matter back to the hearing officer to determine plaintiff's earning capacity and present financial condition and to de-

termine when defendant first objected to Jessica's counselor, Carolyn Wells of Scheidle Associates. The following evidence was produced at the hearing on the remand.

Jessica began counseling on January 14, 1993. On January 24, 1993, defendant wrote a letter to Scheidle Associates objecting to its invoicing him for services without his prior knowledge. This letter also included his concern about Jessica. He also wrote a letter that same day to plaintiff objecting to the invoice and his paying for counseling which appeared to include plaintiff. On January 31, 1993, Jessica talked to defendant via the telephone and informed him that she was upset about the letter he had written to her counselor. Ms. Wells had given the letter to Jessica to read.

On February 3, 1993, defendant called Ms. Wells to inform her that he was upset with her conduct in releasing his letter to Jessica and told her that he would not pay for counseling for which he does not approve. On February 10, 1993, he wrote to the board of examiners in psychology about Ms. Wells' behavior in giving plaintiff and Jessica a copy of his letter. He informed them that he considered her conduct to be unethical, unprofessional, and a breach of confidentiality.

At the second hearing, as well as the first, plaintiff did not submit a tax return. She testified that in October 1994, she had started a job as a school secretary which paid her $646.86 bimonthly. In 1990 she had sold her video store and netted approximately $20,000 from the sale. She also had netted approximately $150,000 from the sale of her home and had used the proceeds to buy another home. Plaintiff did not remember what stocks and bonds she had received from her divorce settlement with defendant.

Based on this information the hearing officer recommended the same order as before. Defendant again filed objections to the recommendation. The court shall now address these exceptions.

Defendant excepts to an order based on plaintiff's actual earnings instead of earning capacity.

He suggests that plaintiff could earn $20,000 to $25,000 per year as a legal secretary.

At the first hearing plaintiff testified that she believed a legal secretary in Maryland could earn $20,000 to $25,000 per year. At the second hearing she testified that this assumption was incorrect and that legal secretaries in her area actually earn $17,000 to $20,000 per year. The court finds that plaintiff's long absence from the work force as a legal secretary hinders her ability to find a job as a legal secretary. Plaintiff testified that her annual salary as a school secretary is $17,500. Assuming *arguendo* that plaintiff's latter testimony concerning the salaries of legal secretaries is correct, then plaintiff is earning a salary equivalent to that of a legal secretary. The court dismisses defendant's exception to plaintiff's earning capacity.

Defendant objects that the order was made retroactive to February 1993, despite an increase in plaintiff's actual earnings. Plaintiff has been a school secretary since November 24, 1994. The court finds that as of that date, the support order should be based on plaintiff's income of $646.81 biweekly, instead of $137 per week. The court will modify the order in accordance with the support guidelines to reflect plaintiff's increase in earnings beginning on November 24, 1994.

Defendant excepts to paying Jessica's counseling. Defendant shares joint legal custody of Jessica pursuant

to a court order. Joint legal custody means that defendant must be consulted in major decisions which affect Jessica. Plaintiff unilaterally took Jessica to a counselor of her choice without first consulting defendant. This was in violation of the custody order. Plaintiff did not have to agree to defendant's choice of Johns Hopkins University. Plaintiff, like defendant, is entitled to have her child treated by someone she approves. Parties are supposed to arrive at mutually satisfactory decisions regarding health care. If they cannot compromise, then they must petition the court for intervention. Plaintiff, however, did not do this. After defendant had made it quite clear to plaintiff that he objected to the counselor, plaintiff, nevertheless, continued to take Jessica to the same counselor. Defendant acknowledges that Jessica may be in need of counseling but he believes that he is entitled to have some input into the selection or, at the very least, the right to refuse to pay for a counselor he considers unsatisfactory. The court agrees with defendant. Therefore, the court will not order defendant to pay any of the counseling fees from the date of his first objection.

Defendant objects to paying 75 percent of the uncovered health care expenses. Pursuant to their post-nuptial agreement the parties are to divide equally the cost of unreimbursed medical expenses. Plaintiff has presented no convincing evidence as to why this provision should be modified. Thus, the court will not change the provision concerning uncovered medical expenses.

In accordance with the foregoing opinion, the court enters the following order.

## ORDER

And now, March 25, 1996, it is hereby ordered that:

1. Defendant shall pay support in the amount of $171 per week for the support of two children: Jessica (date of birth, November 23, 1977; Social Security No. 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) and Eric (date of birth, October 16, 1982; Social Security No. 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) from February 23, 1993, to November 23, 1994.

2. Defendant shall pay support in the amount of $166 per week starting November 24, 1994.

3. In addition, defendant shall pay $5 per week towards accumulated arrears and $.50 per payment service fee.

4. Defendant's income shall be attached in the amount of the basic support and $5 towards arrears plus $.50 service fee.

5. The effective date of this order is February 23, 1993.

6. Defendant shall pay 50 percent of unreimbursed medical expenses, including orthodontia, for the children included herein. Defendant owes no payments towards Jessica's psychological counseling at Scheidle Associates after January 23, 1993.

7. Parties must within seven days inform the domestic relations section and the other parties, in writing, of any material change in circumstances relevant to the level of support or the administration of the support order, including but not limited to, loss or change of income or employment and change of personal address or change of address of any child receiving support. A party who wilfully fails to report a material change in circumstances may be adjudged in contempt of court and may be fined or imprisoned.